IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cr-106-MHT |
| | ) | [WO] |
| CEDRICK SMITH | ) | |
| ANTONIO FLYNN | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the court are motions to suppress evidence filed by Defendants Cedrick Smith (Doc. 33) and Antonio Flynn (Doc. 34).  The Government has filed an opposition brief (Doc. 44), and the court held an evidentiary hearing on the motions on May 9, 2018.  After careful consideration of the parties' submissions, the evidence heard at the hearing, and the relevant law, and for the reasons stated herein, the undersigned Magistrate Judge RECOMMENDS that the motions to suppress (Docs. 33 & 34) be DENIED.

## I.  BACKGROUND

A Grand Jury sitting within the Middle District of Alabama indicted Smith and Flynn on two counts: (1) possession with intent to distribute marijuana and (2) possession of a firearm in furtherance of a drug trafficking crime. Doc. 1.  The defendants claim in their motions to suppress that the Government obtained the critical evidence supporting the charges—three bags of marijuana and a handgun—by conducting an unlawful stop of their vehicle.  The defendants do not dispute the propriety of the search or the voluntariness of their consent, so the lawfulness of the stop is the only issue before the court.

During the evidentiary hearing on the motions to suppress, the court received testimony from Corporal Robert J. Brown, a Montgomery, Alabama police officer; and Orlando Gonzalez, an investigator for the Federal Defender's Office. Doc. 49.   Their testimony established that officers from the Montgomery Police Department ("MPD") executed a search warrant at a residence located at 2461 Brooks Court in Montgomery on the afternoon of July 20, 2017. Tr. at 4.   While on scene, Corporal Brown and MPD officer Bernie Knight were assigned to secure a perimeter around the residence by conducting surveillance in an unmarked police car. Tr. at 4–5.   MPD had previously received a tip from an informant that a black vehicle would be delivering approximately one to two pounds of marijuana to the residence. Tr. at 13.   The officers were positioned in their vehicle on Brooks Court near the stop sign at the intersection with Brooks Street, close to the residence being searched and in a line of several marked and unmarked police vehicles parked along the street's shoulder. Tr. at 8–9.   While stationed at this location, the officers observed traffic and stopped several vehicles traveling along Brooks Street, which runs perpendicular to Brooks Court (*see* Doc. 15-5), based on their belief that the drivers of the vehicles had committed traffic offenses. Tr. at 10.   They did not issue any citations or written warnings as a result of these traffic stops. Tr. at 21–22.

At approximately 1:30 p.m., the officers saw a white Ford Explorer traveling northbound on Brooks Street toward East Fifth Street. Tr. at 10–11.   They watched as the vehicle veered left, across the center of the roadway and at least midway into the southbound lane of travel, before beginning to make a right turn eastbound onto Brooks Court. Tr. at 11 & 37.   At that point, the vehicle suddenly changed course, returning to

Brooks Street and continuing northbound. Tr. at 11–12.  The officers initiated a traffic stop and pulled the vehicle over in a parking lot off of Brooks Street. Tr. at 11.

The officers approached the vehicle and immediately smelled raw marijuana. Tr. at 29.  Officer Knight asked the driver, Smith, if there was anything illegal in the vehicle and told him that they smelled marijuana. Tr. at 17.  Smith immediately stated that there was marijuana in the center console and passenger-side back seat. Tr. at 17.  The officers then asked Smith and Flynn to exit the vehicle. Tr. at 17.  After the defendants got out of the Explorer, Flynn told Corporal Brown that he had placed a handgun underneath the passenger seat. Tr. at 17.  The officers searched the vehicle and found three bags of marijuana: two small bags in the center console and a larger bag on the back seat. Tr. at 18.  They also found a handgun under the front passenger seat. Tr. at 18.

## II.  DISCUSSION

The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The temporary detention of individuals during a traffic stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996).  Thus, every stop of a vehicle by police must be reasonable. *Id.* at 810.  "A traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation occurred or justified by reasonable suspicion [of criminal activity]." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (citation omitted).  "[A]n officer's motive in making the traffic stop does not invalidate what is otherwise

objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citations and internal quotation marks omitted).  Here, the defendants assert that the officers' stop of their vehicle on Brooks Street was not reasonable because (1) the officers did not have probable cause of a traffic violation and (2) the officers did not have reasonable suspicion that the defendants were engaged in criminal activity. Docs. 33 & 34 at 3–4.

## A.      Probable Cause of a Traffic Violation

At the evidentiary hearing, Corporal Brown testified that he stopped the driver of the Ford Explorer (later determined to be Smith) for a violation of Alabama Code § 32-5A-80(a).  That provision provides, in relevant part:

> (a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except . . .
>
> > (2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person doing so shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard . . . .

Ala. Code § 32-5A-80.  Here, the defendants contend that under § 32-5A-80(a)(2) their vehicle was not restricted to the right half of the roadway while traveling on Brooks Street because it is "too narrow to have lanes" due to "heavy vegetation" on both sides of the street, causing vehicles to drive in the middle of the road. Docs. 33 at 4 & 34 at 3.

"Probable cause to arrest exists when the totality of the facts and circumstances support a reasonable belief that the suspect had committed or was committing a crime." *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (internal quotation marks

omitted).  But "probable cause does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction." *Id.* (internal quotation marks omitted).  Consistent with these standards, the court finds that Officer Knight and Corporal Brown had probable cause to believe that the driver of the Ford Explorer violated § 32-5A-80 when they watched the vehicle veer from the right lane, across the center line, and onto the opposite side of Brooks Street before beginning a right turn onto Brooks Court.  Corporal Brown's testimony on this point is the only direct evidence in the record of the roadway as it existed on July 20, 2017, or of Smith's driving behavior on that day. He testified unequivocally that Brooks Street was wide enough on the day in question for two lanes of travel, allowing a vehicle to be confined to the right half of the roadway. Tr. at 25 & 33.  Moreover, Smith's actions on July 20, 2017 reinforce the conclusion that the roadway was of sufficient width, even taking into account any vegetation, to permit travel along one side, because Smith actually had been operating his Explorer on the right half of the roadway as he approached the intersection with Brooks Court. Tr. at 11–12; Doc. 45-3 at 13 (depicting Smith's line of travel prior to the stop).  Moreover, Corporal Brown testified that he did not see any obstruction on the roadway that would cause Smith to swerve left immediately before the Brooks Court intersection. Tr. at 10.   This uncontroverted testimony is more than sufficient to support a reasonable belief that Smith committed a violation of Alabama Code § 32-5A-80.

In the face of this direct evidence of probable cause, the defendants offer various forms of circumstantial evidence in an attempt to prove that vegetation obstructed Brooks Street in such as a way as to prevent Smith from traveling on the right half of the roadway.

This evidence, ultimately, is not persuasive.  The defendants' evidence includes testimony from Gonzalez that he drove to Brooks Street on May 8, 2018, where he watched vehicles regularly traveling in the center of the roadway. Tr. at 41.   Gonzalez also recorded videos to document his observation, which have been admitted into evidence by separate order, and submitted a photograph that depicts a white vehicle facing southbound on Brooks Street just north of the intersection with Brooks Court. Doc. 45-8; *see* Tr. at 43 (dating the photograph in mid-April 2018).  This testimony and the evidentiary materials suffer from a common flaw in that they all tend to establish the condition of the roadway in April or May 2018, nearly one year after the defendants' arrest.  While this fact does not render the evidence to be irrelevant, it does attenuate its persuasive effect.  And certainly the fact that other vehicles may have committed traffic violations on Brooks Street in May 2018 does not materially change the calculus of whether Corporal Brown had probable cause to believe Smith violated § 32-5A-80 in July 2017.

Even ignoring this temporal limitation, however, the defendants' circumstantial evidence is inconclusive at best.  For example, the defendants' photograph of a vehicle on Brooks Street does not necessarily show that the roadway is narrow enough to prevent two-way traffic, as the vehicle is positioned well off of the shoulder of the roadway. Tr. at 40 (confirming that the vehicle in the picture is located "in the middle of the road").  Even then the court cannot conclude from the photograph that there is not enough room for another vehicle traveling northbound to pass to the right of the vehicle. *See* Doc. 45-8.  In addition, the Government has introduced an image from Google Maps depicting Brooks Street at the Brooks Court intersection in April 2014 (according to the image's timestamp)

that tends to show that this portion of the street is of sufficient width to permit vehicles traveling in both directions to occupy their respective halves of the roadway in accordance with § 32-5A-80 because the image appears to depict two sets of tire tracks worn into the concrete—one on each side of the roadway with visible space between the innermost track of each set. Doc. 45-3 at 4.  In the final analysis, the sum total of this evidence does not undermine the conclusion that the officers had probable cause to stop Smith's Ford Explorer on July 20, 2017 for a violation of § 32-5A-80.

The defendants point to another section of the Alabama Code, which requires that drivers "upon roadways having width not more than one line of traffic in each direction shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible." Ala. Code § 32-5A-81.  Therefore, they argue, drivers on "narrow roadways are permitted to drive their vehicles in the middle of the road unless they come across a person driving in the opposite direction." Docs. 33 & 34 at 4.  This is a mischaracterization of § 32-5A-81, which does not expressly permit drivers on two-way roads to drive their vehicles in the middle of the road unless there is a vehicle approaching from the opposite direction.  Rather, the plain language of the statute merely directs drivers on certain roadways to give vehicles passing in the opposite direction "at least one-half of the main traveled portion of the roadway as nearly as possible." Ala. Code § 32-5A-81.  Because the record demonstrates that no oncoming traffic was present when the defendants' Ford Explorer drove northbound on Brooks Street on July 20, 2017, § 32-5A-81 is not relevant to the court's analysis of whether the officers had probable cause to believe Smith committed a traffic violation.

In conclusion, the Government has met its burden to demonstrate that the officers had probable cause of a traffic violation when they stopped the defendants' vehicle.[1] Accordingly, based on the record before it, the court concludes that that the stop was reasonable under the Fourth Amendment.

## B.    Reasonable Suspicion of Criminal Activity

Even in the absence of probable cause of a traffic offense, the Government asserts that the officers had reasonable suspicion that the defendants were engaged in criminal activity. Doc. 44 at 4–5.  Police officers may briefly stop an individual when the "officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).  Courts must look to the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).  "The 'reasonable suspicion' to justify such a stop 'is dependent upon both the content of the information possessed by police and its degree of reliability.'" *Navarette*, 134 S. Ct. at 1687 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).  While reasonable suspicion is more than merely a hunch, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534

---

[1] During the evidentiary hearing, Corporal Brown offered the additional justification that he had probable cause to believe Smith was intoxicated because of the way he drove his vehicle. Tr. at 36.  Due to the finding of probable cause for a violation of § 32-5A-80, the court pretermits discussion of this argument.

U.S. at 274 (citation omitted).

Here, the Government asserts that the officers had a reasonable and articulable suspicion that criminal activity was afoot based on two primary factors: (1) the prior tip they had received that one to two pounds of marijuana would be delivered to the residence in a black vehicle, and (2) the fact that the defendants' vehicle performed an erratic maneuver once it was within view of the line of police vehicles on the shoulder of Brooks Court.  The court agrees.

"[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also United States v. Jordan*, 635 F.3d 1181, 1187 (11th Cir. 2011) ("Defensive behavior toward police is a relevant factor in [the existence of reasonable suspicion]."). And reasonable suspicion "principles apply with full force to investigative stops based on information from anonymous tips."[2] *Navarette*, 134 S. Ct. at 1688.  While an anonymous tip by itself usually will not support an investigative detention, "under appropriate circumstances, an anonymous tip can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop." *Id.* (internal quotation marks omitted).  Specifically, when a tipster "accurately predict[s] future behavior," he has demonstrated a "special familiarity" with the defendant's affairs confirming that the tipster had access to reliable information concerning the defendant's illegal behavior. *Id.* (internal quotation marks omitted).  But a "bare-bones" tip with no accompanying explanation for the tipster's basis of knowledge is

---

[2] It is unclear from Corporal Brown's testimony whether or not the tip in this case was anonymous, but certainly the Government did not independently establish the informant's reliability.

"insufficiently reliable" to justify an investigatory stop. *Id.*

During the hearing, the Government elicited no testimony from Corporal Brown regarding the reliability of the tip. And the tip predicted that the vehicle delivering drugs to the residence would be black, while the defendants' Ford Explorer was white.[3] Tr. at 26–27. Thus, the officers would not have had a reasonable suspicion, based purely on the tip, that the occupants of a white Ford Explorer traveling down Brooks Street were engaged in criminal activity. But the officers had more than just the tip. Corporal Brown testified that he and Officer Knight were sitting in a line of several marked and unmarked police vehicles on Brooks Court, a street that dead-ends into a cul-de-sac with few homes. *See* Doc. 45-5 (appearing to depict as few as two homes on Brooks Court). The characteristics of Brooks Court make it significantly more likely that a vehicle turning onto that street would be destined for the home being searched and not unintentionally turning down that street. Corporal Brown confirmed that once the vehicle abruptly interrupted its turn onto Brooks Court and continued northbound on Brooks Street, "[t]hat told me [the vehicle] could potentially have marijuana in it because it didn't want to be near police vehicles." Tr. at 13–14.

Based on the totality of the circumstances, including the tip specifically stating that one to two pounds of marijuana would be delivered to the residence that afternoon, Corporal Brown and Officer Knight had reasonable suspicion to believe the occupants of

---

[3] Corporal Brown testified that, despite the color discrepancy, the vehicle still raised the officers' suspicions because "someone might say, 'hey, I'm going to show up in a black vehicle,' but then show up in a different color vehicle for either counter-surveillance . . . [or] just to make sure it's not a setup or anything like that." Tr. at 14.

the Ford Explorer were engaged in criminal activity when the vehicle suddenly and evasively aborted its turn onto Brooks Court as soon as it was within sight of police vehicles.  The officers were acting on more than a mere hunch when they had information that drugs would be delivered to the residence at that time and observed a vehicle demonstrating objectively evasive behavior.  Even in the absence of probable cause, the stop was justified by the officers' reasonable suspicion that Smith and Flynn were engaged in illegal activity.

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the motions to suppress (Docs. 33 & 34) be DENIED.  It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation not later than **June 15, 2018**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein*

*v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 1st day of June, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE